UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

STEPHANIE TURNER

CIVIL ACTION

VERSUS

NO. 09-896-JJB-CN

JACOBS ENGINEERING GROUP, INC.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant's Motion (doc. 13) for Summary Judgment. Plaintiff has filed an opposition (doc. 28) to which Defendant has filed a reply (doc. 39). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein the Court GRANTS Defendant's motion (doc. 13).

## Background

### I. Facts

This suit arises out of the alleged mistreatment of Plaintiff Stephanie Turner ("Turner") by her employer, Jacobs Engineering Group, Inc. ("JEG"). The following facts are undisputed. On April 10, 2006, JEG hired Turner to act as its Manager of Project Administration and Document Control ("MPADC") to oversee its Administrative Services and Document Control Groups.[1] (doc. 13, ex. 2). Under JEG policy, the MPADC is classified as a Discipline/Department Manager ("D/D Manager"). D/D Managers oversee specific departments, attend weekly

---

[1] The Administrative Services group primarily performs secretarial work on behalf of Project Managers, and the Document Control group enters drawings and revisions made by the engineering group into JEG's electronic data management system (doc. 13, ex. 2).

meetings of the D/D Managers, prepare weekly reports and report directly to the Manager of Engineering (doc. 13, ex. 4). With one exception, each of the other D/D Managers oversee departments that engage in substantive engineering work and have engineering degrees and years of engineering experience (doc. 13, exs. 2, 3, 4). In early 2008, JEG hired Bill Broussard ("Broussard") as its Manager of Engineering, at which point problems allegedly began to arise.

In May 2008, Turner notified JEG's Manager of Human Resources, Holly Powell ("Powell"), that she was making less than the other D/D Managers, all of whom are male (doc. 13, ex. 2).[2] Turner believed she should be receiving equal pay because she, like the every other D/D Manager, supervised a department, attended meetings of the D/D Managers and wrote weekly reports to the Manager of Engineering. Powell explained to Turner that JEG determines its employees' compensation by reference to its salary administration manual (doc. 13, ex. 4). The manual classifies jobs by family and assigns a corresponding salary range (doc. 13, ex. 4). Though the manual classifies the MPADC as a D/D Manager, the manual also classifies the MPADC as an Administrative, rather than an Engineering position (doc. 13, ex. 4).

Turner also experienced a number of incidents during Broussard's tenure which she alleges constitute harassment. She claims that Broussard (1) acted as if "[she], being a woman, . . . would get upset . . . and cry . . . or be emotional"

---

[2] At the time of her departure, Turner was making $46.00 per hour while the other D/D Managers were making between $62.00 and $85.00 per hour (doc. 13, ex. 2).

when Broussard met with her to discuss his expectations for her position; (2) "yelled" "[y]ou just don't listen" at her and referred to her as "that chick" and "that lady" at a staff meeting; (3) said, about an outfit she was wearing, that "[she] looked like [she] was going ride horses with the clothing [she] had on;" (4) stated at a staff meeting that "he had problems communicating with the women on his team" and that he had not yet "learned how to handle women in leadership roles in his group;" and (5) indicated that he did not want women engineers participating in a Woman's Collaborative (doc. 13, ex. 2). In addition, Turner claims that another male employee told her that she was "looking good" (doc. 13, ex. 2). Finally, Turner claims that JEG-employee Milly Gautreaux asked her if she would participate in the company's dunking booth for a United Way kick-off event, and that Turner felt obligated to do so, but ultimately refused (doc. 13, ex. 2).

On May 8, 2008, at her annual performance review, Broussard gave Turner a rating of "Below Expectations" in the "Integrity" category because two of Turner's coworkers had reported that they could not trust her (doc. 13, ex. 3). Turner complained to Powell and Jere Ducote, Broussard's superior. On May 9, 2008, Broussard changed Turner's rating to "Meets Expectations" and received a salary increase five percent higher than the previous year's (doc. 13, exs. 2, 3, 4).

In July 2008, JEG replaced Broussard with Eric Balkom ("Balkom") (doc. 13, ex. 3). Soon thereafter, Balkom received a complaint from one of Turner's

employees (doc. 13, ex. 5). Balkom subsequently conducted interviews with several of Turner's employees and concluded that Turner favored the administrative staff over the document management staff (doc. 13, ex. 5). Balkom also concluded that Turner was not educated in and was unwilling to learn about JEG's document control procedures and was thus unable to provide her department with guidance (doc. 13, ex. 5). In addition, Balkom received several complaints from employees outside Turner's department that she was did not understand the document management system and could not resolve personnel problems (doc. 13, ex. 5).

Based on these reports, Balkom informed Turner that she was being removed as MPADC on October 27, 2008 (doc. 13, ex. 5). At the meeting Balkom—who had no knowledge that Turner had lodged complaints with Powell prior to making his decision—ensured Turner that his decision was not in retaliation for her complaints to Powell,[3] but was based on her work performance (doc. 13, ex. 5). On November 7, 2008 Turner was placed on lay-off status (doc. 13, ex. 5).

## II. Procedural History

On September 17, 2009, Turner filed suit against JEG, and on October 16, 2009, the suit was removed to this Court (doc. 1). Turner asserts that JEG

---

[3] In addition to approaching Powell about her compensation, Turner allegedly lodged complaints on behalf of other employees. Turner claims that she asked Broussard whether JEG had been violating Federal law by requiring hourly, non-exempt employees to attend unpaid training sessions during their lunch breaks (doc. 13, ex. 2). Turner further claims that Broussard instructed her to lie to her employees that they were not entitled to compensation for the meetings, and that she reported the incident to Powell (doc. 13, ex. 2).

violated Louisiana discrimination and anti-retaliation laws by (1) denying her equal pay because of gender; (2) discriminating against her and subjecting her to a hostile work environment because of her gender; and (3) retaliating against her for filing complaints with Powell and the EEOC. On March 10, 2011, Turner filed an Amended Complaint (doc. 23) wherein she asserts violations of Title VII of the Civil Rights Act ("Title VII") premised upon the same conduct. Finally, Turner asserts a claim for intentional infliction of emotional distress ("IIED").

On February 25, 2011, JEG filed its Motion (doc. 13) for Summary Judgment. JEG asserts that (1) Turner's equal pay claim fails because she did not perform substantially similar work as other D/D Managers and was not similarly qualified; (2) Turner's gender discrimination and hostile work environment claim must fail because JEG's employees did not engage in sufficiently severe harassment. JEG also asserts that (3) Turner's retaliation claim must fail because (a) Turner reported conduct that did not actually violate state law; (b) Turner cannot base her retaliation claim on her performance review or untoward comments; and (c) Turner cannot establish intent or causation. Finally, JEG asserts that Plaintiff's IIED claim must be dismissed because the complained-of conduct was not sufficiently severe and because her claim has prescribed.

On April 7, 2011, Plaintiff filed her motion in opposition (doc. 28). Plaintiff asserts that her equal pay claim should not be dismissed because there are genuine issues of material fact as to whether she performed work that was

substantially similar to the other D/D Managers, and whether her gender was a motivating factor in the decision to pay her less. Additionally, Plaintiff asserts that her discrimination and IIED claims should not be dismissed because genuine issues of material fact exist as to whether JEG's employees' conduct was sufficiently severe. Plaintiff also asserts that her retaliation claim should not be dismissed because genuine issues of fact exist as to which actions were a sufficiently tangible employment actions and whether her gender played a role in any of the actions.

## Standard of Review

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the issue is one in which the movant bears the burden of proof at trial, the movant must demonstrate the absence of material facts and entitlement to judgment as a matter of law. *Id.* at 321. If the movant does so, in order to survive the motion for summary judgment, the nonmovant must show that a genuine issue of material fact remains for the factfinder to resolve. *Id.* at 323. In either case, the court must

6

construe all facts in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "genuine issue of material fact" exists only when a reasonable fact-finder could return a verdict in the non-movant's favor. *Id.* at 248.

## Discussion

### I. Equal Pay Claim

Plaintiff asserts that she was paid less than the other D/D Managers because of her gender, despite that she performed substantially similar work—for example, overseeing a department, attending meetings of the D/D Managers, writing weekly reports, and reporting to the Manager of Engineering (doc. 1). Defendant asserts, though JEG indisputably paid Plaintiff less than its other D/D Managers, it had reasons for doing so which were not related to Plaintiff's gender (doc. 13). For instance, Defendant asserts that, unlike Turner, the other D/D Managers had college degrees, experience in engineering, and oversaw departments engaged in some form of engineering.

In the United States Court of Appeals for the Fifth Circuit, disparate pay claims are analyzed using the *McDonnell-Douglas* burden-shifting standard.[4] To prevail on a "disparate pay claim" a plaintiff must first establish a prima facie case of discrimination by demonstrating that (1) she is a member of a protected class;

---

[4] Louisiana courts generally look to federal jurisprudence to interpret Louisiana discrimination laws. *King v. Phelps Dunbar, LLP*, 743 So. 2d 181, 187 (La. 1999). As such, the Court analyzes Plaintiff's federal and state law discrimination claims using primarily federal law.

and (2) she was paid less than a non-member for performing substantially similar—that is, "nearly identical"—work. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008).

If the plaintiff fails to set forth a prima facie case of discrimination, the plaintiff's cause of action must be dismissed; if the plaintiff does bear its burden, the burden shifts to the employer to show a legitimate, nondiscriminatory justification for the disparity. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). *See*, *e.g.*, *Collins v. Sailorman*, 512 F. Supp. 2d 502, 510 (W.D. La. 2007) (stating that experience is a legitimate, nondiscriminatory reason for a disparity in pay); *Darring v. DailyAccess Corp.*, 2006 U.S. Dist. LEXIS 17326 (S.D. Ala. Mar. 27, 2006) (stating that academic and relevant experience are legitimate, nondiscriminatory reasons for a disparity in pay).

The Court finds that there are no genuine issues of material fact. As MPADC, Turner oversaw the Administrative Services and Document Control departments while the other D/D managers oversaw the Civil Engineering, Mechanical Engineering, Electrical Engineering, Instrumentation and Piping departments (doc. 13, ex. 2). Moreover, each of the other D/D managers had engineering degrees and extensive experience in engineering, while Turner did not have a college degree or any engineering experience (doc. 13, ex. 2).

The Court also finds that Defendant is entitled to judgment as a matter of law. Plaintiff has failed to show that she performed work that was "nearly identical" to the male D/D Managers, as is required to state a prima facie case of

discrimination in pay.  *Taylor*, 554 F.3d at 522.  Plaintiff oversees a department that performs secretarial and document management work, while the other D/D managers oversee departments that engage in substantive engineering (doc. 13, ex. 2).  Though she must also attend meetings with the other D/D managers and provide weekly reports to the Manager of Engineering, she performs a significantly different function than the other D/D managers.

## II. Gender Discrimination and Hostile Work Environment Claims

Plaintiff asserts that she was subjected to gender discrimination.  Plaintiff claims that she was verbally harassed by Broussard and other JEG employees because of her gender (doc. 1).  Plaintiff asserts that there are genuine issues of material fact as to whether this conduct was severe enough to maintain her gender discrimination claim.  Defendant asserts that there are no genuine issues of material fact as to what alleged harassment occurred and that none of the alleged harassment was sufficiently severe to maintain her gender discrimination claim (doc. 13).

In the Fifth Circuit, whether an employee suffered "tangible employment action" determines how a court analyzes an employee's claim of supervisor harassment.  *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002).[5]  If the employee suffers "tangible employment action" after being harassed, the

---

[5] Again, Louisiana courts generally look to federal jurisprudence to interpret Louisiana discrimination laws, including those involving sexual harassment.  *King*, 743 So. 2d at 187.  As such, the Court analyzes Plaintiff's federal and state law discrimination claims using primarily federal law.

claim is classified as a "quid pro quo" claim; if not, it is classified as a "hostile work environment" claim. *Id.*

To establish a "hostile work environment" claim, a plaintiff must establish that (1) she belongs to a protected group; (2) she was subjected to harassment; (3) the harassment was based upon a protected characteristic; and (4) the harassment affected a term, condition or privilege of employment. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009). In determining whether the harassment "affects a term or condition of employment," consider (1) its frequency; (2) its severity; (3) whether it is threatening or humiliating or merely offensive; and (4) whether it substantially diminishes an employee's opportunity to succeed in the workplace. *Ramsey v. Henderson Postmaster Gen.*, 286 F.3d 264, 268 (5th Cir. 2002); *Skinner v. Brown*, 951 F. Supp. 1307, 1322 (S.D. Tex. 1996), *aff'd*, 134 F.3d 368 (5th Cir. 1997). Because Title VII was not meant to become a "general civility code," it does not forbid "the ordinary tribulations of the workplace, such as abusive language, gender-related jokes, and occasional teasing." *Onacle v. Sundower Offshore Serv., Inc.*, 523 U.S. 75, 80-81 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).[6]

---

[6] *See, e.g.*, *Russell v. Univ. of Tex.*, 234 F. App'x 195, 205-06 (5th Cir. 2007) (affirming summary judgment of plaintiff's hostile work environment claim when the following alleged harassment occurred: her supervisor inappropriately touched the plaintiff; called her "honey" and "babe;" said "[he] wouldn't mind watching a movie in bed with [her]; and implied he wanted to live with her); *Setptimus*, 399 F.3d at 612 (finding that the plaintiff's being subjected to a two-hour berating, being questioned in a "mocking tone" and being told she was "like a needy old girlfriend" was not sufficiently severe or pervasive); *Sardina v. United Parcel Serv.*, 254 F. App'x 108 (2d Cir. 2007) (finding that use of terms "office b***hes" and "Brooklyn bimbettes" and various sexually suggestive comments were not sufficiently severe or pervasive); *Murphy v. City of Aventura*, 383 F. App'x 915 (11th Cir. 2010) (finding that words like "dumbs**t," "stupid f**k," and "dumb f**k" are general vulgarities and not covered by Title VII and that use

The Court finds that there are no genuine issues of material fact.  Over a roughly six-month period Broussard (1) displayed discomfort or apprehension about managing women;[7] (2) "yelled" "[y]ou just don't listen" to Turner and referred to her as "that chick" and "that lady" at a staff meeting; and (3) said about Turner's outfit that "[she] looked like [she] was going ride horses with the clothing [she] had on" (doc. 13, ex. 2).  In addition, another JEG employee told her that she was "looking good" (doc. 13, ex. 2).  Finally, Turner claims that she was asked whether she would participate in a dunking booth (doc. 13, ex. 2).

The Court also finds that Defendant is entitled to judgment as a matter of law.  First, some of the statements Plaintiff cites to support her claim are simply not harassment and/or were not directed at Turner, like the request that she participate in JEG's dunking booth or Broussard's general and relatively innocuous comments about communicating with women.  What's more, many of the allegedly harassing statements are not based on Plaintiff's gender.  *Stewart*, 586 F.3d at 330.  For example, Broussard's comments that "[Turner] just doesn't listen," or about her attire, though arguably rude or offensive, are not explicitly gender-related.  Most importantly, the Court finds that each of the incidents are simply "the ordinary tribulations of the workplace, such as abusive language, gender-related jokes, and occasional teasing."  *Faragher*, 524 U.S. at 788.  The

---

of words like "slut," "whore," "b***h," and "hooker," only a few times over a nine-year period were not sufficiently severe or pervasive).

[7] Broussard (1) acted as if "[she], being a woman, . . . would get upset . . . and cry . . . or be emotional" when Broussard met with her to discuss his expectations for her position; (2) stated at a staff meeting that "he had problems communicating with the women on his team" and that he had not yet "learned how to handle women in leadership roles in his group;" and (3) shook his head at a staff meeting indicating that he did not want women engineers participating in a Woman's Collaborative (doc. 13, ex. 2).

comment that she "looking good" or Broussard's referring to her as "that chick or "that lady," may be offensive, but mere offense is not the hallmark of Title VII. *Onacle*, 523 U.S. at 80-81, *Ramsey*, 286 F.3d at 268. Because Title VII is not a "general civility code," *Onacle*, 523 U.S. at 80, this and other Circuit courts have found far more severe conduct to be insufficient to support a claim under Title VII. *See, e.g.*, *Russell*, 234 F. App'x at 205-06; *Setptimus v. Univ. of Houston, 399 F.3d 601, 612 (5th Cir. 2005)*; *Sardina*, 254 F. App'x at 108; *Murphy*, 383 F. App'x at 915.

### III. Retaliation Claim

Plaintiff asserts that JEG retaliated against her in violation of Title VII and the Louisiana Whistleblower Act ("LWA") (doc. 1). Plaintiff asserts that JEG retaliated against her for complaining about the disparity in her pay and about Broussard's alleged demand that she lie to her employees about their unpaid training sessions. Plaintiff also asserts that JEG retaliated by rating her "Integrity" as "Below Expectations" in her annual performance review and by terminating her (doc. 1).

Defendant asserts that Turner cannot maintain a claim under the LWA because JEG did not engage in any activity that violated Louisiana law (doc. 13). Defendant also asserts that Plaintiff cannot base a retaliation claim on her negative performance review or inappropriate comments directed towards her, because such conduct does not constitute "tangible adverse employment action." Finally, Defendant also asserts that Turner's retaliation claim must be dismissed

because she has produced no evidence demonstrating that she was terminated for retaliation and not her allegedly poor performance.

The LWA states that "[a]n employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law" (1) "[d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law;" or (2) "objects to or refuses to participate in an employment act or practice that is in violation of law." The term "violations of law" in the statute refers to Louisiana, not federal law. *Hale v. Touro Infirmary*, 886 So. 2d 1210, 1216 (La. Ct. App. 4th Cir. 2004), *writ denied* 896 So. 2d 1036 (La. 2005). As such, the LWA does not prohibit on an employer from retaliating against an employee for disclosing or objecting to violations of federal law. *Hale*, 886 So. 2d at 1216. In addition, the statute requires that the employer *actually violate* a state law, and so an employee's good faith belief that the employer violated state law alone is insufficient. *Dane v. Bd. of Supervisors of La. State Univ.*, 2010 U.S. Dist. LEXIS 94645, *28-29 (M.D. La. June 15, 2010). *Accardo v. La. Health Servs. & Indem. Co.*, 943 So. 2d 381, 386 (La. Ct. App. 1st Cir. 2006).

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in activity that is protected by the statute; (2) her employer took tangible adverse employment action against her; and (3) her engaging in the protected activity caused her employer to take the tangible adverse employment action. *Roberts v. Unitrin Specialty Lines Ins. Co.*,

13

2010 U.S. App. LEXIS 25952 (5th Cir. 2010). Generally speaking, "tangible adverse employment action" includes only ultimate employment decisions like hiring, discharging, promoting or compensating. *Id*. *See also Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) (finding that a negative performance review is not an adverse employment action); *Watkins v. Paulsen*, 332 F. App'x 958, 960 (5th Cir. 2009) (same).

The Court finds that there are no genuine issues of material fact. Turner testified that she did not lodge any complaints directly with Balkom, and Balkom testified that he was not aware that Turner had lodged any complaints at the time he decided to terminate her (doc. 13, exs. 2, 5). Moreover, when Turner asked whether her termination was related to her complaints, Balkom and Powell expressly stated that it was not (doc. 13, exs. 2, 4). Rather, Balkom testified that Broussard was terminated due to her poor performance as MPADC (doc. 13, ex. 5). After receiving a complaint from one of Turner's employees, Balkom interviewed a variety of JEG employees about her performance (doc. 13, ex. 5). The interviews revealed that Turner was a divisive figure in her department; experienced difficulty in addressing personnel problems; and was not knowledgeable enough to advise her employees on document management protocol and was unwilling to learn (doc. 13, ex. 5).

The Court also finds that Defendant is entitled to judgment as a matter of law. Plaintiff's claims under the LWA must be dismissed because Plaintiff failed to establish that Defendant engaged in discriminatory conduct, *see supra* §§ I &

14

II, and because any violation by the Defendant relating to unpaid training sessions arises under Federal, not state, law. *Hale*, 886 So. 2d at 1216; *Dane*, 2010 U.S. Dist. LEXIS 94645, *28-29; *Accardo*, 943 So. 2d at 386. *See* Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

The Court finds that Plaintiff's Title VII claims must also be dismissed. Plaintiff cannot premise her retaliation claims on her performance review or inappropriate comments directed at her because such conduct is not akin to an ultimate employment decision and so does not constitute "tangible employment action." *Roberts*, 2010 U.S. App. LEXIS 25952. In addition, Plaintiff's retaliation claim cannot survive summary judgment because she simply has not produced any evidence suggesting that she was terminated in retaliation for her complaints. *See Celotex*, 477 U.S. at 323, 325. In contrast, Defendant has provided extensive evidence suggesting that Plaintiff performed poorly as the MPADC (doc. 13, exs. 4, 5).

## IV. Intentional Infliction of Emotional Distress

Plaintiff asserts that Defendant is liable for the tort of IIED because of its employees' verbal harassment, discrimination and retaliation (doc. 1). Defendant asserts that its employees' conduct was not sufficiently severe to support Turner's IIED claim and that the claim has nonetheless prescribed (doc. 13). In opposition, Plaintiff asserts that there are genuine issues of material fact as to whether the complained-of conduct is sufficiently severe and that her claim has not prescribed because the continuing tort doctrine applies (doc. 28).

15

To recover for IIED, a plaintiff must establish that (1) the defendant engaged in conduct that was extreme and outrageous; (2) she suffered severe emotional distress; and (3) the defendant knew or should have known that plaintiff's distress was substantially certain to occur. *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1022, 1024-25 (La. 2000). To qualify, "the conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry." *Id.* at 1208; *see also White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991) ("Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.").

The Court finds that there are no genuine issues of material fact. The Court finds that there are no genuine issues of material fact. Over a roughly six-month period Broussard (1) displayed discomfort or apprehension about managing women;[8] (2) "yelled" "[y]ou just don't listen" to Turner and referred to her as "that chick" and "that lady" at a staff meeting; and (3) said about Turner's outfit that "[she] looked like [she] was going ride horses with the clothing [she] had on" (doc. 13, ex. 2). In addition, another JEG employee told her that she

---

[8] Broussard (1) acted as if "[she], being a woman, . . . would get upset . . . and cry . . . or be emotional" when Broussard met with her to discuss his expectations for her position; (2) stated at a staff meeting that "he had problems communicating with the women on his team" and that he had not yet "learned how to handle women in leadership roles in his group;" and (3) shook his head at a staff meeting indicating that he did not want women engineers participating in a Woman's Collaborative (doc. 13, ex. 2).

was "looking good" (doc. 13, ex. 2).  Finally, Turner claims that she was asked whether she would participate in a dunking booth (doc. 13, ex. 2).

The Court also finds that Defendant is entitled to judgment as a matter of law.  The complained-of conduct and comments are not extreme or outrageous conduct.  Instead, the Court finds that they are simply "insults, indignities, threats, annoyances, petty oppressions or other trivialities" to which modern employees "must necessarily be expected to be hardened."  *White*, 585 So. 2d at 1209.

## Conclusion

Accordingly, the Court hereby GRANTS Defendant's Motion (doc. 13) for Summary Judgment as to all of Plaintiff's claims.

Signed in Baton Rouge, Louisiana, on this 6th day of May, 2011.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**